UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| MOHUMMED ATIYEH, individually and on behalf of all others similarly situated, | Case No. Hon. |
| Plaintiff, | |
| vs. | **CLASS ACTION** |
| CITY OF GRAND RAPIDS, FIRE DEPARTMENT, a municipal corporation, | |
| Defendant. | |

_____/

Gerald D. Wahl (P26511)
Edmund S. Aronowitz (P81474)
Attorneys for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
gwahl@sterlingattorneys.com
earonowitz@sterlingattorneys.com
_____/

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Mohummed Atiyeh, individually and on behalf of all others similarly situated, by his attorneys Sterling Attorneys at Law, P.C., for his putative Class Action Complaint and Jury Demand against the City of Grand Rapids, Fire Department submits as follows:

## INTRODUCTION

1. This is an action to obtain redress for race discrimination in violation Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.* by Defendant City of Grand Rapids arising from a discriminatory written examination administered on at least March 2, 2015, used as part of the hiring process for firefighter positions with the City's Fire Department that barred Plaintiff Mohummed Atiyeh and other black applicants from being hired as Firefighters.

## PARTIES

2. Plaintiff Mohummed Atiyeh ("Plaintiff" or "Atiyeh") is a black firefighter with the Syracuse Fire Department residing in Syracuse, New York.

3. Defendant City of Grand Rapids ("Defendant" or the "City") is a Michigan municipal corporation with a primary address of 300 Monroe Avenue, Room 880, Grand Rapids, Michigan, Kent County, within the Western District of Michigan, and the City of Grand Rapids Fire Department ("GRFD") is a department of named party defendant City of Grand Rapids.

4. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964 as amended, 42 USC 2000e *et seq.*

## JURISIDICTION AND VENUE

5. This Court has federal question jurisdiction under 28 USC 1331 because this action arises under the laws of the United States.

6. Venue is proper in this district under 28 USC 1391(a)(2), (b)(1), and (b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district and defendant resides in this judicial district.

7. Plaintiff timely files this complaint within 90 days of receiving his EEOC right to sue notice dated March 11, 2024, attached as **Exhibit 1** to this Complaint, after having timely filed his Charge of Discrimination with the Michigan Department of Civil Rights on August 29, 2015, attached as **Exhibit 2** to this Complaint.

## FACT ALLEGATIONS

8. On January 16, 2015, Defendant invited the general public to apply for the position of Firefighter through a posting to the City's online jobs bulletin attached as **Exhibit 3** (the "Posting").

9. As stated in the Posting, Defendant required applicants to proceed through a three-part "Firefighter examination" that included "a written exam, physical agility test, and oral exam" with an application closing date of February 23, 2015.

10. On March 2, 2015, Defendant administered a 120 multiple choice question written exam, also referred to by Defendant as a "written test," (hereinafter the "March 2015 Written Test") to 769 people, including Plaintiff.

11. Defendant initially set 70% as the passing score for the March 2015 Written Test.

12. Plaintiff's score on the March 2015 Written Test was 53.3%.

13. Plaintiff scored lowest on the "Grammar" portion of the March 2015 Written Test (3 of 10 questions answered correctly) and highest on the Logic and Reasoning (7 of 10 questions answered correctly) and Safety (10 of 10 questions answered correctly) portions of March 2015 Written Test.

14. As a result of his overall score of 53.3%, however, Plaintiff did not proceed to the remaining portions (the physical agility test and the oral exam) of the Firefighter examination and was not hired as a Firefighter by Defendant.

15. Plaintiff was later hired as Firefighter by the Syracuse Fire Department after taking and successfully passing a different firefighter examination process.

16. The last time Defendant had administered (before 2015) a Firefighter exam was in or around 2010 or 2011, and as stated by GRFD Deputy Chief Kevin Sehlmeyer, "the test came from the book," referring to the pre 2015 test.

17. The March 2015 Written Test, however, did not come from the book.

18. Rather, Defendant assigned development of the March 2015 Written Test to Defendant's long-time Human Resources Analyst Bruce Sullivan with review, and approval, prior to administration, by Deputy Chief Sehlmeyer.

19. To create the March 2015 Written Test, Mr. Sullivan alleges he "pulled together questions from other tests that we have on file" using "[o]nly city tests not from outside testing sources."

20. Deputy Chief Sehlmeyer further explained that Mr. Sullivan "took a bunch of tests[s] from 30 years ago" to create the March 2015 Written Test.

21. Then GRFD Chief Laura Knapp, who stated she was not consulted on the March 2015 Written Test prior to its administration, indicated that Defendant "used questions from other tests and just cobbled a test together."

22. While Mr. Sullivan, Deputy Chief Sehlmeyer, and Chief Laura Knapp all claim the March 2015 Written Test was developed to increase diversity within the GRFD, the March 2015 Written Test, whether intentionally or merely recklessly, had the opposite effect.

23. Defendant has not reused the exact March 2015 Written Test in subsequent firefighter application cycles.

24. However, in a second application process in or around September 2015, Defendant used the March 2015 Written Test with 20 questions eliminated.

25. In yet later application processes, Defendant used validated tests prepared by, and purchased from, outside vendors.

26. According to Defendant, of the 769 people who took the March 2015 Written Test, 691 self-identified as White, 26 as African American, 27 as Hispanic, 5 as American Indian, 6 as Asian, and 14 as Other.

27. In total, 428 people achieved the originally set passing score of 70% on the March 2015 Written Test.

28. According to Defendant, 400 White applicants passed and 291 failed the March 2015 Written Test for a 57.9% White applicant pass rate.

29. According to Defendant, 8 African American applicants passed and 18 failed the March 2015 Written Test for a 30.8% African American applicant pass rate.

30. Based on Defendant's reported numbers, 20 applicants that self-identified as Hispanic, American Indian, Asian, or Other passed and 32 failed the March 2015 Written Test for a 38.5% combined Hispanic, American Indian, Asian, or "Other" applicant pass rate.

6

31.     The number of African Americans and other minority applicants that passed and failed the modified version of the March 2015 Written Test used in the second 2015 application process in or around September 2015 is presently unknown.

32.     As previously alleged, on August 29, 2015, Plaintiff filed a charge of discrimination against Defendant alleging on behalf of himself and other African American applicants who took the March 2015 Written Test that they were all discriminated against in testing and hiring due to race.

33.     On December 19, 2016, the EEOC conducted onsite interviews of Defendant's personnel including Mr. Sullivan, Deputy Chief Sehlmeyer, and Chief Laura Knapp.

34.     On June 14, 2023, the EEOC issued a determination, attached as **Exhibit 4**, in which the EEOC stated:

> Evidence obtained indicates that although all applicants took the same written examination, the examination had a disparate impact on the Black applicants who took it; specifically, a higher percentage of Black applicants failed to pass the examination than is statistically likely to have occurred by chance. Evidence obtained indicates that the Respondent has not proven the business necessity of the written examination to the extent necessary to justify this disparate impact on the Charging Party and a class of other Black applicants. Therefore, there is reasonable cause to believe the Respondent violated Title VII.

35.     Also on June 14, 2023, the EEOC wrote in a pre-determination interview form, attached as **Exhibit 5**, that:

  1. During the course of the investigation, employees and Human Resource analysts provided information and evidence substantiating that the testing used at that time had not been professionally vetted and presented an adverse impact to the Charging Party and a class of 18 additional African American applicants. 2. Statistical analysis was completed internally by the EEOC (Fishers Exact Test-Two Tail) supported this and showed statistical disparities that concluded that there is an impact of CP's affected class and is indeed disproportionate compared with employees outside the protected class. 3 Respondent has been unable to prove that the testing was job related and consistent with business necessity. 4. The investigation shows that a specific, facially neutral employment policy or practice (The application process/written exam) is identified and isolated 5. The investigation shows that likelier than not that the policy or practice adversely affected Charging Party's protected class.

36. Following the EEOC's determination, the EEOC engaged the parties in a conciliation process.

37. The EEOC conciliation process did not result in a settlement of Plaintiffs' charge of discrimination.

38. The March 2015 Written Test has a statistically significant adverse impact on black applicants in that it disqualified those applicants from further consideration for firefighter positions with Defendant at a higher rate than it disqualified applicants of other races.

39. The March 2015 Written Test is not a business necessity because there are other tests that perform the same function without disparately impacting or treating black applicants.

40. On information and belief, Defendant was aware of its failure to obtain racially statistical balance in its hiring practices and work force, the use of industry approved written test questions designed to obtain a racially balanced workforce, and consciously disregarded the use of those tests, instead, using questions it knew would screen out minority applicants.

41. On information and belief, Defendant intentionally discriminated against black applicants, including Plaintiff, by cobbling together a written examination that screened out minority applicants, including particularly African Americans, from progressing in the application process.

42. Plaintiff will seek to certify their claim for disparate impact and disparate treatment race discrimination arising under Title VII (Counts I and II) as a class action, with the Class alternatively defined as "all African American Applicants that did not pass the March 2015 Written Test" or "all applicants that self-identified as African American, Hispanic, Native American, Asian, or Other that did not pass the March 2015 Written test" pursuant to Federal Rule of Civil Procedure because:

    A. The class of at least 18 black applicants and 32 other minority applicants disparately impacted and treated by Defendant's March 2015 Written Test is so numerous that joinder of all members is impracticable;

B. There are questions of law and fact common to the class;

C. The claims or defenses of the representative parties are typical of the claims or defenses of the class;

D. Plaintiff as proposed class representative will fairly and adequately protect the interests of the class;

E. Defendant in using the March 2015 Written Test has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;

F. Plaintiff's counsel are competent to represent Plaintiff and the proposed class; and,

G. Questions of law or fact common to the proposed class members predominate over any questions affecting only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## COUNT I

**DISPARATE IMPACT RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

43. Plaintiff incorporates the preceding paragraphs by reference.

44. Plaintiff brings this disparate impact claim on an individual and class basis.

45. This Count arises under Title VII for Defendant's policy and practice of cobbling together and using the March 2015 Written Test resulting in a significant adverse impact on Plaintiff and the other members of the alternatively proposed classes described above by denying them the opportunity to move forward in the Grand Rapids Fire Department application process.

46. Defendant's use and implementation of the March 2015 Written Test caused a statistically significant disparate impact on Plaintiff and those similarly situated.

47. Defendant's firefighter application process was not race neutral in violation of law.

48. Defendant failed to exercise reasonable care in designing and using the March 2015 Written Test.

49. Defendant's acts and omissions with respect to the March 2015 Written Test were not a business necessity.

50. As a direct and proximate result of the above-alleged acts or omissions of Defendant, Plaintiff and others similarly situated suffered damages of a pecuniary and non-pecuniary nature.

WHEREFORE, Plaintiff and the proposed classes respectfully pray that this Court certify this action as a class action, enter judgment against Defendant on this claim, and award equitable relief, including an award of back pay, other incidental and consequential damages, including attorney fees, and all such other relief as is just and proper.

## COUNT II

### DISPARATE TREATMENT RACE DISCRIMINATION IN VIOLATION OF TITLE VII

51. Plaintiff incorporates the prior paragraphs by reference.

52. Plaintiff brings this disparate treatment claim in which he seeks compensatory damages in addition to the equitable relief available for a disparate impact claim on an individual basis only, and further reserves the right to have other disparately treated African American applicants who took and did not pass the March 2015 Written Test join this claim as preserved should they later wish to do so.

53. Defendant intentionally discriminated on the basis of race in the 2015 firefighter hiring process through its failure to adequately supervise creation of and implementation of the March 2015 Written Test.

54. Defendant's conduct denied Plaintiff the equal opportunity to progress in the firefighter application process and adversely affected his compensation and career progression.

55. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries and is entitled to compensation for his loss of wages, including back pay; compensation for loss of the value of fringe benefits; compensation based on his earning potential as a firefighter delayed in violation of law by Defendant's racially discriminatory March 2015 Written Test; liquidated damages; damages for embarrassment, humiliation, betrayal, pain and suffering, and mental anguish; punitive damages for intentional conduct; other incidental and consequential damages, including attorney fees; and, all such other relief as is just and proper.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendant, and award damages for his loss of wages, including back pay, compensation for loss of the value of fringe benefits, compensation based on his earning potential as a firefighter delayed in violation of law by Defendant's racially discriminatory March 2015 Written Test, liquidated damages, damages for embarrassment, humiliation, betrayal, pain and suffering, and mental anguish, punitive damages for intentional conduct, other incidental

and consequential damages, including attorney fees and, all such other relief as is just and proper.

## JURY DEMAND

Plaintiff Mohummed Atiyeh, by his attorneys Sterling Attorneys at Law, P.C., demands a trial by jury on all such claims so triable.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By: /s/Gerald D. Wahl
Gerald D. Wahl (P26511)
Edmund S. Aronowitz (P81474)
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

Dated: June 6, 2024